This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**PAMELA K. DENNING,**

Worker-Appellant,

v.                                        NO.   32,566

**KALLONI, LLC, d/b/a TOMASITA'S,**
**and REPUBLIC UNDERWRITERS**
**INSURANCE COMPANY,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**David L. Skinner, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Appellant

Miller Stratvert P.A.
Nathan A. Cobb
Dan A. Akenhead
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

{1}     Pamela Denning (Worker) appeals from the compensation order and the order denying Worker's motion for reconsideration entered by the Workers' Compensation Judge (WCJ) in favor of Kalloni, LLC, d/b/a Tomasita's (Employer), and Republic Underwriters Insurance Company (Insurer).

**I.     BACKGROUND**

{2}     Worker was injured at work on September 16, 2009.  She sustained injuries to her head, cervical spine, thoracic spine, lumbar spine, and right hip.  Worker became physically unable to work as a result of these injuries, and she has not earned any wages since the accident.  She received Worker's Compensation benefits until the WCJ found that she reached maximum medical improvement (MMI) from her physical injuries. Worker was terminated from work on October 30, 2010, for reasons unrelated to her accident.  In 2011, nearly two years after the original accident, Worker was diagnosed with psychological injuries, including depression, anxiety disorder, and pain disorder.  The WCJ denied benefits for her psychological injuries, finding that they were not a result of her physical injury at work, but rather were the direct consequence of her termination.  Worker filed a motion for reconsideration on the issue of the WCJ's denial of benefits for her mental injuries on October 12, 2012 that was denied.  Worker raises three issues on appeal:  (1) whether the WCJ erred by

failing to find a causal connection between Worker's psychological injuries and the work accident; (2) whether the WCJ erred by finding an exception to the uncontradicted medical evidence rule; and (3) whether the WCJ erred by finding that Worker was at MMI for her physical injuries and by not awarding continuing temporary total disability (TTD) benefits for her mental injuries. **II.   DISCUSSION**

**A.      The WCJ's Finding That There Is No Causal Connection Between Worker's Accident and Her Mental Injuries Is Affirmed**

**{3}**      Worker argues that the WCJ erred in its determination that there was no causal connection between the accident she sustained at work and her psychological injuries. Employer/Insurer argued, and the WCJ agreed, that Worker's psychological problems were triggered by her termination from employment and not by her accident at work. For the reasons that follow, the WCJ's ruling on this issue is affirmed.  Factual findings of a WCJ are subject to "[w]hole record review" that contemplates "a canvass by the reviewing court of all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result." *Tallman v. ABF (Arkansas Best Freight)*, 1988-NMCA-091, ¶ 9, 108 N.M. 124, 767 P.2d 363.  "Substantial evidence on the whole record is such evidence that demonstrates the reasonableness of the administrative decision. . . .  We will not . . .

substitute our judgment for that of the agency[.]" *Herman v. Miners' Hosp.*, 1991-NMSC-021, ¶ 6, 111 N.M. 550, 807 P.2d 734.

{4}     Worker was terminated from her employment on October 30, 2010. The WCJ found that she was a long-term employee of Employer, who rightly considered herself to be a trusted and important member of the very successful restaurant and bar's management team. Her sense of self-worth was, in no small part, a product of her work ethic and her long-term position. The WCJ also found that Worker's sense of self-worth was dependent on her employment. The undisputed reason for her termination from employment was a change in management. When this employment was terminated, her depression became debilitating. It hurt her feelings that, despite the new owner of the restaurant being someone whom she had known since he was twelve years old, he did not want Worker to continue as an employee after a nearly thirty-year employment relationship. She told her psychiatrist, Dr. Karl Ray, that her release from work was "like being kicked to the curb." She cried about the "perceived . . . ill treatment she had received by her former [E]mployer." On September 28, 2011, Worker reported to Dr. Ray that she thought of suicide daily. Dr. Ray noted that Worker "hadn't said that she thought of [suicide] daily before then[.]"

{5}     In the time period between Worker's injury and her termination by Employer, Worker did not need or seek mental health treatment and did not have a mental

4

impairment. In her deposition, she admits that her depression was manageable up until the point that Employer terminated her employment. Worker's treatment for psychological problems began at the recommendation of Dr. Belyn Schwartz on February 28, 2011, nearly two years after her accident on September 16, 2009, but only four months after her termination from employment. Worker states that the reason Dr. Schwartz referred her to a psychiatrist was because she "was . . . coming unglued about [her] body being bad, and it didn't start getting bad until after [Employer] told [her] that another person was coming in with their own people and [she] wouldn't have a job there anymore." This visit on February 28, 2011 was the first time in the medical record that Worker complained of suicidal ideation. On her next visit to Dr. Schwartz, Worker was referred to Dr. Ray for psychiatric evaluation and care. Worker states that she felt "betrayed." She further stated that from the time of the accident, September 2009, to the time of her termination, October 2010, she had been a "little depressed" because her "body was not working right," but she had come to terms with the fact that it was just an accident, and she had to deal with it. Even more, she admitted that, but for her termination by Employer, "[she] would [not] feel like [she does], as far as mentally[.]" She believes her mental state would be better had it not been for her termination from employment.

{6} The WCJ found that "Worker's mental illness and mental impairment are not the natural and direct result of the accident[,] but rather are the natural and direct result

5

of the termination of her employment." The WCJ also concluded that "[t]he termination of employment was for reasons unrelated to the accident or the physical injuries suffered in the accident." The WCJ stated: "But for the termination of employment in October of [2010,] Worker would not presently be suffering from a mental illness, would not presently have a mental impairment[,] and would not require treatment from a mental health professional." In a whole record review, we give deference to the WCJ as the fact finder. *Herman*, 1991-NMSC-021, ¶ 6. The WCJ concluded that Worker's mental health problems did not derive from her original injury. Given the clear course of Worker's injury, termination, and the onset of her depression, we conclude that substantial evidence does support the WCJ's findings on this issue, we therefore affirm his decision.

**B.     The WCJ's Finding That an Exception to the Uncontradicted Medical Evidence Rule Applies Was Correct**

{7}     The uncontradicted medical evidence rule is an exception to the general rule that a trial court can accept or reject expert opinion as it sees fit. *Lucero v. Los Alamos Constructors, Inc.*, 1969-NMCA-005, ¶ 12, 79 N.M. 789, 450 P.2d 198. The rule is found in NMSA 1978, Section 52-1-28(B) (1987), which requires a worker to prove a causal connection between a disability and an accident by expert testimony. Uncontradicted evidence by expert testimony is binding on the trial court. This rule has four exceptions, however, one of which "occurs when the testimony is

6

contradicted, or subject to reasonable doubt as to its truth or veracity, by legitimate inferences drawn from the facts and circumstances of the case." The rule does not require the fact finder to accept the version of facts upon which an expert's conclusion is based. *Nunez v. Smith's Mgmt. Corp.*, 1988-NMCA-109, ¶ 15, 108 N.M. 186, 769 P.2d 99. For example, if an expert misunderstands the facts of a case, the fact finder need not adopt the expert's opinion that is based on that misunderstanding of the facts. *Id.* (noting that an expert's opinion is only as good as the factual basis for that opinion). Dr. Ray and Dr. Gabriela Munoz, a psychologist, linked the termination of Worker's employment to her original injury. However, the WCJ determined that "the termination of employment was not in any way, shape[,] or form linked to the work accident." He found "Worker's testimony concerning the state of her mental health after the . . . accident and before the termination of her employment as compared with the state of her mental health after termination of her employment to be credible and determinative as to the course of her mental illness." **{8}** The psychiatric and psychological evidence in this case is not uncontradicted because it is "subject to reasonable doubt as to its truth or veracity, by legitimate inferences drawn from the facts and circumstances of the case." Dr. Ray's opinion as to the source of Worker's psychological conditions was based upon the oral history provided by Worker. Dr. Munoz was never deposed, and the factual basis for her opinions was not presented at trial. However, the WCJ found that, "[i]n this case[,] the mental health

7

professionals appear to link the termination of employment back to the . . . accident." This observation is given further credence by Dr. Ray's deposition. On direct examination by Worker, Dr. Ray causally related Worker's psychological issues to the workplace accident on September 16, 2009. However, on cross-examination, it became apparent that Dr. Ray mistakenly believed that Worker was terminated as a result of her workplace accident, and he based his causation opinions upon this mistaken belief. He specified that Worker's fall at work was not the immediate cause of her depression and mental health concerns. Dr. Ray stated: "[I]t is an antecedent cause. If she hadn't fallen, the termination of employment wouldn't have occurred." However, the undisputed fact that the termination was a result of nothing more than a change in management breaks the causal chain that Dr. Ray relied upon in forming that opinion.

{9} The evidence and testimony as to the causal link between Worker's injury and her subsequent mental health problems is not uncontradicted and is subject to reasonable doubt as to its veracity. This evidence is dubious because both doctors relied solely on Worker's oral testimony to form their conclusion about causation. What is more, Dr. Ray admitted to misunderstanding the facts of the case in his deposition. The WCJ's conclusion that the uncontradicted medical evidence rule does not apply is affirmed.

**C.	The WCJ's Finding That Worker Has Obtained MMI and Its Denial of**

**Continued Benefits Is Affirmed**

{10} The WCJ found that Worker reached MMI for her physical injuries suffered with a nine percent whole person impairment rating and sedentary work restrictions. The WCJ also found that Worker is not entitled to additional indemnity benefits as a result of her mental illness or mental impairment. Worker filed a motion for reconsideration on October 12, 2012, asking that the WCJ reconsider his findings in regard to whether Worker suffered a mental impairment as a result of her work injury. In denying the Worker's motion, the WCJ noted that "the expert opinions concerning causation were based on a presumed causal link between the . . . accident and the termination of employment that [the WCJ found] simply did not exist." Because we agree with the WCJ in regard to the first two issues, we must affirm on this issue. The Worker has reached MMI for her physical injuries, which are the only injuries arising from the accident. The denial of continued benefits for her mental injuries is also affirmed.

**II.    CONCLUSION**

{11} For the foregoing reasons, we affirm the WCJ's decision.

{12} **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Chief Judge**

9

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**


_____
**M. MONICA ZAMORA, Judge**