416 P.2d 150·

Roy V. TYNER, Plaintiff-Appellant,

v.

Jack DiPAOLO, d/b/a "D" Construction Company, personally and as a partner in and manager of the "D" Construction Company, a partnership, O. O. Barnes and William McCarty, Defendants-Appellees.

No. 7798.

Supreme Court of New Mexico.

July 5, 1966.

**484**

James M. H. Cullender, Roswell, for appellant.

Jack Underwood, Ruidoso, for appellees.

## OPINION

CHAVEZ, Justice.

Defendant-appellee Jack DiPaolo was the prime contractor for the installation of a water-works system for the village of Ruidoso Downs. He and plaintiff-appellant entered into a written contract whereby appellant was to perform services and supply materials as a subcontractor.

On June 12, 1963, plaintiff-appellant Roy V. Tyner stopped work on the project and he later filed this action to recover payment for work performed and materials supplied. Named as defendants along with appellee DiPaolo and his "D" Construction Company were two persons who signed as sureties on the construction bond.

Appellees denied owing appellant any amount and cross-claimed for $1,000 which DiPaolo was required to spend "in excess of what he would have been required to spend had Tyner faithfully completed the contract. * * *"

The trial court concluded that appellant wrongfully breached his contract with appellee DiPaolo; that DiPaolo was entitled to offset his damages against appellant's claim; that appellant was not entitled to reimbursement for legal fees; and that appellant had forfeited any claim for payment under the contract.

We first consider appellant's last contention, that the trial court erred in finding

that appellant's failure to complete the contract was not due to any fault of appellee DiPaolo, as disposition of this point affects the entire appeal.

Appellant directs our attention to the trial court's finding of fact which reads:

"3. The prime contractor was late and overdue in obtaining permits, supplies, materials, pipe, pipe glue, fire plugs and other items which were to be supplied by him, as needed, resulting in delays costly to the subcontractor in 20 or more individual instances, sometimes causing work stoppage, shifting of work crews and other delays, as a result of which the subcontractor became dissatisfied, and complained to the contractor."

Appellant does not claim to have terminated the contract in accordance with its terms, which permitted such termination if a fifteen-day stoppage occurred as a result of the contractor's negligence, and if a five-day-written notice were given. Nor does appellant seek the liquidated damages provided for in the contract, if appellant were delayed through the negligence of the contractor. He apparently argues that the finding quoted above required a conclusion that appellee DiPaolo was at fault for delays, and that appellant's removal from the project was justified.

We find in the record testimony by an engineer that the delays on the project "were very ordinary." Another witness testified that the failure to obtain a permit to cross a highway was not DiPaolo's fault. Appellant's superintendent indicated that some pipe was delayed due to a mis-shipment. A consulting engineer stated that the failures encountered were not more than would be expected on a job, and that most of them were due to collars which were damaged in shipment.

It is a well-established rule that this court will not weigh the evidence on appeal, but will only determine if there is substantial evidence to support the findings and conclusions of the trial court and, if there is conflict in the testimony, the decision of the court below will be sustained. Hummer v. Betenbough, 75 N.M. 274, 404 P.2d 110. There is substantial evidence to support the trial court's finding that appellant's failure to complete the contract was not due to any fault of appellee DiPaolo.

Appellant also contends that the trial court erred when it found that the written contract between the parties was neither terminated nor amended by a subsequent oral agreement. Again, testimony on this issue is contradictory. Appellant testified that the parties agreed that appellant would stop work and be paid for the portion completed. Appellant offered evidence that DiPaolo rented equipment from him and utilized appellant's workers as an indication of the agreement. Appellee DiPaolo, on the other hand, testified that he never agreed to release appellant from the

written contract. Under the rule set out above, we hold that there is substantial evidence to support the trial court's finding and we will not disturb it.

Appellant next contends that the trial court erred when it failed to find that appellant had completed work valued at $4,055.77 more than the progress payments which he had received. Appellees alleged in their cross-complaint that appellant would have been entitled to such an amount "had * * * [appellant] completed the contract." Appellee DiPaolo testified that —"It cost me $5,961.61 more than if Mr. Tyner would have fulfilled his contract." In response to the question—"Were you damaged financially by Mr. Tyner's failure to fulfill his contract?" appellee DiPaolo answered—"I was. * * * Around $1900." This testimony supports the trial court's finding, which appellant does not attack, that appellee DiPaolo "was damaged * * * in a sum greater than the amount to which plaintiff [appellant] was entitled under the terms of the contract at the time of the breach; * * *."

■ Appellant was not prejudiced by the trial court's failure to make a finding on this fact, in view of its finding that appellee DiPaolo, at the trial, "waived verbally any claim that he might have against the plaintiff [appellant] over and above the amount which defendant [appellee] DiPaolo owed plaintiff at the time of the breach."

■ Appellant also contends that the trial court erred in refusing to award him $1,000 for the construction and installation of a chlorine tank. This job, and the amount of compensation to be given for it, were expressly stated in the written contract between the parties. Appellant testified concerning the delivery of the tank and included the $1,000 in his testimony, which established the value of appellant's services and materials up to the time that he stopped work. Such an amount would appear to be included in the trial court's consideration of "the amount to which plaintiff [appellant] was entitled under the terms of the contract," which amount is set out in one of the trial court's findings. The finding has not been attacked and, since no counterclaim was awarded to appellee DiPaolo, appellant was not prejudiced by the trial court's failure to make a finding on this portion of the amount to which appellant was entitled at the time he stopped work on the project.

Appellant directs our attention to appellees' cross-complaint and contends that the trial court's finding, that appellee DiPaolo's damages were greater than the amount due appellant at the time of the breach, was outside the scope of the pleadings. Appellees' cross-complaint reads in part:

"2. That thereafter, when plaintiff cross-defendant Roy V. Tyner refused to complete the contract, it was necessary for defendant cross-plaintiff DiPaolo to him-

self take over the work which Tyner had contracted for under Exhibit A, as a consequence of which defendant cross-plaintiff Jack DiPaolo expended the sum of approximately One Thousand Dollars in excess of what he would have been required to spend had Tyner faithfully completed the contract previously referred to."

We agree with appellant, that there is an ambiguity in appellees' cross-complaint. It can be read to claim that appellee DiPaolo was damaged in the amount of $1,000; or it may be read as stating that DiPaolo was damaged in an amount equal to $1,000, plus the amount he would have paid appellant upon completion of the contract.

■ Appellant does not refute appellee DiPaolo's testimony, that—"It cost me $5,961.61 more than if Mr. Tyner would have fulfilled his contract." In Allsup v. Space, 69 N.M. 353, 367 P.2d 531, this court allowed plaintiffs to recover more than their complaint sought. We said that the trial court could treat the complaint as amended to conform with the evidence admitted without objection and make findings accordingly. Such an interpretation of § 21–1–1(15) (b), N.M.S.A., 1953 Comp. should be applied in the instant case. The trial court acted properly in treating appellees' cross-complaint as amended, and finding that appellee DiPaolo was damaged in an amount "greater than the amount to which plaintiff [appellant] was entitled under the terms of the contract at the time of the breach; * * *."

■ . Appellant further contends that appellee DiPaolo was unjustly enriched because he was fully compensated by the village of Ruidoso Downs and did not pay appellant for the work and materials which appellant supplied. In view of our conclusion, concerning appellee DiPaolo's damages as a result of appellant's breach of the contract, we find no error in allowing appellee DiPaolo to offset his damages against appellant's claim for $4,055.77.

■ Appellant contends that the trial court erred when it failed to grant him judgment against the two appellees who admitted that they signed appellee DiPaolo's bond. Nowhere in the record are we able to find the provisions of the surety bond which appellant contends was executed. Without knowledge of those provisions, we are unable to ascertain what obligations, if any, were undertaken by the alleged sureties and decline to assess any liability against them.

■ Lastly, appellant argues that the trial court erred in not awarding him attorney's fees for this action. He indicates that § 61–2–13, N.M.S.A., 1953 Comp., provides for such fees in actions relative to mechanic's liens; however, in his reply brief appellant acknowledges that this is not such an action. Appellant argues that fairness dictates that subcontractors should be

so compensated in order to assure that prime contractors will treat subcontractors in a fair and proper manner. Appellant cites no authority for his position. The reimbursement of legal fees to subcontractors in suits against prime contractors is a problem for the legislature and, in the absence of any legislative direction, such fees are not allowable. The trial court properly held that appellant was not entitled to attorney's fees in this case.

The judgment of the district court is affirmed.

It is so ordered.

CARMODY, C. J., and MOISE, J., concur.