630 P.2d 27

**PAUL SCHOONOVER, INC., an Arizona Corporation, Appellee,**

v.

**RAM CONSTRUCTION, INC., an Arizona Corporation, and Aetna Casualty and Surety Company, a Connecticut Corporation, Appellants.**

No. 15071.

Supreme Court of Arizona, En Banc.

June 2, 1981.

Logan, Marton, Halladay & Hall by Kraig J. Marton, Phoenix, for appellants.

Cahill, Hanson, Phillips & Mahowald by Bruce M. Phillips, Phoenix, for appellee.

HAYS, Justice.

An action was brought by Paul Schoonover, Inc., a subcontractor (hereinafter referred to as appellee), to recover payment for monies due under a contract entered into between it and Ram Construction, Inc., the general contractor (hereinafter referred to as Ram). The contract concerned the construction of an addition to H. M.

McKemy Intermediate School Library, a public building in Tempe. Aetna Casualty and Surety Company was joined as a defendant in the action below as the surety who bonded the performance of the school construction project and was jointly represented throughout by counsel for Ram. Aetna appeals the entry of judgment for plaintiff by the Superior Court. Plaintiff was successful in a hearing before the registrar of contractors and received an award in arbitration. Ram did not appeal the adverse judgment and therefore it is admitted that Ram failed to perform its contractual obligation with appellee. Aetna asserted no defenses nor objections independent of those asserted by Ram at trial. Subsequent to trial, Aetna filed an "Objection to the Form of Judgment and Motion for New Trial," claiming that there was no evidence to sustain the entry of judgment against Aetna. This motion was denied and formal written judgment entered. We take jurisdiction pursuant to 17A A.R.S. Rules of Civil Appellate Procedure, rule 19(e).

■ It has long been established in Arizona that an appellate court must view the evidence and reasonable inferences therefrom in the light most favorable to the party in whose favor the judgment was rendered and if there is any evidence to support the judgment of the trial court, it must be affirmed. *Kubby v. Crescent Steel*, 105 Ariz. 459, 466 P.2d 753 (1970); *Hueg v. Sunburst Farms (Glendale) Mutual Water & Agricultural Co.*, 122 Ariz. 284, 594 P.2d 538 (App.1979). Viewed in this light, we affirm.

■ The burden upon appellee to establish a cause of action on the bond consists of proving the execution of the contract of suretyship, breach by the principal, loss or damages sustained as a result of the breach, and liability of the surety therefor. 72 C.J.S. *Principal and Surety* § 270 (1951). The first three requirements were evidenced by the final judgment determining the liability of Ram, and by the admissions in appellee's answer.

■ Plaintiff-appellee's complaint alleged:

"[T]he construction of Tempe Elementary School, District Number 3 has been bonded and that the bonding company holding said bond for the performance of said contract is AETNA CASUALTY AND SURETY COMPANY; that plaintiff is due payment from defendant, pursuant to the contract attached hereto and by reference included herein, and defendant AETNA CASUALTY AND SURETY COMPANY as bonding company for the performance of said contract is liable thereon,"

Aetna and Ram jointly answered the complaint:

"Admit that RAM CONSTRUCTION, INC. (RAM) is an Arizona corporation which was engaged in contracting on or about June 10, 1976 and that AETNA CASUALTY AND SURETY COMPANY (AETNA) is the bonding company which bonded RAM in connection with construction done in Tempe Elementary School District Number 3. Deny all the rest of Paragraph I of Plaintiff's Complaint and demand strict proof thereof.

"Admit that plaintiff and RAM entered into a contract . . ."

The admission binds Aetna and is conclusive as to the admitted fact. *Schwartz v. Schwerin*, 85 Ariz. 242, 249, 336 P.2d 144, 148 (1959). The final requirement, the sufficiency of the evidence of appellant's liability is now questioned.

■ Appellant contends that the failure to introduce the bond itself at trial was fatal and that the extent and nature of the bond was not otherwise proven. This contention was disposed of in *Mine & Smelter Supply Co. v. General Insurance Co. of America*, 24 Utah 2d 330, 471 P.2d 154 (1970), where a bond was posted in conformance with a statute requiring it for construction of a public building. The supplier of the subcontractor was awarded the cost of material he supplied to the general contractor, and the insurance bonding company for the general contractor appealed. The court stated,

"[a]s to the second claim of error General Insurance contends that it was error for the trial court to enter judgment against it inasmuch as the bond it supplied was not offered or received in evidence. An examination of the pleadings reveals that General Insurance admitted by its answer that it supplied the surety bond we are here concerned with. No issue was raised by the pleading in which General Insurance contended that it was not liable on its undertaking. It would appear that this matter was first raised in this court and was not called to the attention of the trial court. We are of the opinion that appellant's contention respecting the bond is without merit." *Id.* at 332, 471 P.2d at 156.

As here, the appellants have admitted supplying the bond, and the record contains the general contract between Ram and the owner which required a performance bond on this project. This bond was to cover the "faithful performance (100%) of the contract and the payment of all obligations (100%) arising therein, in such form as the owner may prescribe with all sureties as he may approve." We find appellee's statement persuasive that "[w]hile the [general] contract may not be total evidence of performance, it does evidence the requirement, the performance of which is admitted by the Answer." Since Ram was adjudicated liable and Aetna supplied the bond covering 100% performance and raised no defense nor objection independent of Ram at trial, it can be inferred that Aetna is liable.

The record shows no indication that the existence and coverage of the bond were at issue. Defendant-appellant's attorney questioned appellee's president as follows at trial:

Q. You knew this was a municipal job, did you not, Mr. Schoonover?

A. Yes.

Q. You knew there was a performance bond for the benefit of the contractors on this job by Aetna Casualty and Surety?

A. I knew there was a bond.

Q. You knew that it was for your benefit?

A. Eventually, if necessary.

The testimony at trial and the admissions in the pleadings and documentary evidence all tend to establish the applicability of the bond and liability thereon.

■■■ Appellants argue that following the decision in *Tyner v. DiPaolo,* 76 N.M. 483, 416 P.2d 150 (1966), this court should not "assess any liability," because we are not able to "ascertain what obligations, if any, were undertaken" by Aetna. We disagree and hold that under Arizona authority the law is read into the bond. "The law is well settled that if a surety makes a contract with the law before him the law enters into and becomes a part of the agreement." *Porter v. Eyer,* 80 Ariz. 169, 172, 294 P.2d 661, 663 (1956); *see United States Fidelity & Guaranty Co. v. Bross,* 118 Ariz. 599, 601, 578 P.2d 1028 (App.1978). The same principle has been applied in the case of guardianship bonds. Generally, "[t]he liability of compensated sureties on statutory undertakings is measured by the terms of the statute for the sureties engage with eyes open to the statute [citation omitted]." *United States Fidelity & Guaranty Co. v. St. Mary's Hospital of Tucson,* 10 Ariz.App. 346, 348, 458 P.2d 966, 968 (1969).

We incorporate into the bond, A.R.S. § 34–222.* This statute required Ram to

---

* § 34–222. Surety bond required; suit on bond; limitations

A. Except where specifically exempted by statute, before any contract is executed with any person for the construction, alteration, or repair of any public building, a public work or improvement of the state or any county, city or town, or officer, board of commission thereof, and irrigation, power, electrical, drainage and flood control districts, tax levying public improvement districts, and county or city improvement districts, he shall furnish to the agent entering into such contract, the following bonds which shall become binding upon the award of the contract to such person, who, for purposes of this article, means "contractor":

1. A performance bond in an amount equal to the full contract amount conditioned upon the faithful performance of the contract in accordance with plans, specifications and conditions thereof. Such bond shall be solely for the

furnish a performance bond for the "construction, alteration, or repair of any public building." This procedure was followed as exhibited in the performance bond provision of the general contract referred to above. The statute further requires that the bond be in an amount equal to the full contract amount conditioned on the faithful performance of the contract for the protection of the public body, in this instance, Tempe Elementary School District # 3, also the materialmen and the subcontractor.

Our statute § 34–222 is modeled after the federal statute, the Miller Act, 40 U.S.C. § 270a *et seq.* In *Western Asbestos Co. v. T G K Construction Co.*, 121 Ariz. 388, 590 P.2d 927 (1979), the supplier of a subcontractor sued a general contractor and its surety, seeking payment under our statute, the "Little Miller Act." We considered the persuasiveness of decisions under the federal statute.

In *United States v. Starr*, 20 F.2d 803, 805 (4th Cir. 1927), the court gave effect to the statutory provisions which were designed to protect the claims of materialmen, whether or not the provisions were actually incorporated in the bond, as we will do in this case. *Accord, People v. Metropolitan Surety Co.*, 211 N.Y. 107, 105 N.E. 99 (1914).

■ Appellants urge that under the case of *Johns-Manville Sales Corp. v. Reliance Insurance Co.*, 410 F.2d 277 (9th Cir. 1969), coverage should be denied. Contrarily, there the bond was not required or executed pursuant to a state statute and legislative intent could not be used to supply the missing conditions. Here, the statute was designed to cover the exact fact situation we have at hand, Furthermore, the court in *Johns-Manville, supra,* cited with approval the case law which permits recovery on a bond required by a statute which prescribed the substance and conditions of the bond, *Porter v. Eyer, supra; Mine & Smelter Supply Co. v. General Insurance Co. of America, supra.*

We find sufficient evidence in the record to support the trial court's finding of liability against Aetna, which admittedly provided the bond for the McKemy School Library construction. This bond covered the situation at bar where the principal, Ram, failed to compensate appellee in full for work performed.

Affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and CAMERON and GORDON, JJ., concur.

---

protection of the state or the public body awarding the contract, as the case may be.

2. A payment bond in an amount equal to the full contract amount solely for the protection of claimants supplying labor or materials to the contractor or his subcontractors in the prosecution of the work provided for in such contract.

B. Each such bond shall include a provision allowing the prevailing party in a suit on such bond to recover as a part of his judgment such reasonable attorneys' fees as may be fixed by a judge of the court.

C. Each such bond shall be executed by a surety company or companies duly authorized to do business in this state. In the case of contracts of the state or a department, board, commission, institution or agency thereof, the bonds shall be payable to the state. In case of all other contracts, the bonds shall be payable to the public body concerned. . . .